IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:18-cv- 837

| MICKEY DALE SNOW | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) COMPLAINT |
| | ) (JURY TRIAL DEMANDED) |
| BERKSHIRE HATHAWAY, INC. and | ) |
| GREENSBORO NEWS & | ) |
| RECORD, LLC, DANIEL P. FINNEGAN, | ) |
| And DANIELLE BATTAGLIA, | ) |
| | ) |
| Defendants. | ) |

Plaintiff MICKEY DALE SNOW brings this Complaint pursuant to Fed.R.Civ.P. 8. against the Defendants BERKSHIRE HATHAWAY, INC., THE GREENSBORO NEWS AND RECORD, DANIEL P. FINNEGAN AND DANIELLE BATTAGLIA, and seeks a jury trial, and alleges as follows:

## INTRODUCTION

This case arises out of all Defendants false and misleading statements about Plaintiff's travel to Florida pursuant to a valid Court Order. Defendants sought to further damage the Plaintiff's credibility and to tarnish the Plaintiff's image and reputation and to improperly influence the potential jury in the Plaintiff's criminal trial by disseminating false, misleading and sensationalized travel details, which were all done in an effort to defame the Plaintiff. All Defendants engaged in bitter, underhanded, and dishonest journalism, including publishing outright falsehoods about Plaintiff Mickey Dale Snow, in order to sell newspapers and win awards for their numerous articles about Plaintiff. Plaintiff Mickey Dale Snow, by this

1

complaint, seeks to hold all Defendants accountable for the false and defamatory statements that all Defendants made about him.

## PARTIES

1. Plaintiff, Mickey Dale Snow, is a citizen and resident of Ormond Beach, Florida and was wrongfully and unconstitutionally injured by the willful, intentional libel and defamation by the Defendants.

2. Upon information and belief, Defendant Berkshire Hathaway Inc. (hereinafter "Berkshire") is a Nebraska corporation with its corporate headquarters in the State of Nebraska. Defendant is duly licensed and registered to do business in the State of North Carolina and operates a company primarily focused on sales of many products, including in this instance a news publication, *to wit*, The Greensboro News & Record, throughout the United States of America and within the State of North Carolina.

3. Upon information and belief, Defendant Greensboro News and Record, LLC (hereinafter "N&R") is a North Carolina Limited Liability Company with its corporate headquarters in the State of Nebraska. Defendant is duly licensed and registered to do business in the State of North Carolina and operates a company primarily focused on sales of a news publication, *to wit*, The Greensboro News & Record, within the State of North Carolina.

4. Upon information and belief, Defendant Daniel P. Finnegan ("Finnegan") is a resident of North Carolina and all times pertinent to this Complaint was an employee of both Defendants. All actions complained of were taken within the course and scope of his employment as Publisher and Editor of the Defendant Greensboro News & Record. He is also sued in his individual capacity, as well as an employee of both Defendants.

5. Upon information and belief, Defendant Danielle Battaglia ("Battaglia") is a

resident of North Carolina and all times pertinent to this Complaint was an employee and of both Defendants. All actions complained of were taken within the course and scope of her employment with the Defendant Greensboro News & Record as a reporter. She is also sued in her individual capacity, as well as an employee of both Defendants.

## JURISDICTION AND VENUE

6. Plaintiff files this action in federal court pursuant to 28 U.S.C. 1332, Diversity of Citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), and Plaintiff further asserts the Court's jurisdiction under 28 U.S.C. § 1331 and asks the Court to exercise supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

7. Venue appears to be proper in this Court, the United States Middle District of North Carolina as all actions occurred in Guilford, Rockingham and surrounding counties and all Defendants except Berkshire Hathaway, Inc. are domiciled and/or are residents of Guilford County.

## FACTS

8. Defendants made demonstrably false, misleading, and scurrilous statements that defamed Plaintiff Mickey Dale Snow with the implicit intent to further tarnish the Plaintiff's image and reputation, all in an effort to improperly influence the potential jury in the Plaintiff's criminal trial with false, misleading and sensationalized details. Which were all done in an effort to defame the Plaintiff.

9. In November of 2015, Plaintiff was indicted by a Rockingham County, North Carolina grand jury on Twenty-Two felony counts involving accusations of teenage prostitution. Plaintiff was placed in custody in the Rockingham County Detention Center before he was

released on a Twenty-Five Million Dollar ($25,000,000.00) secured bond. He was originally placed in the custody of the Rockingham County Sheriff Sam Page on Thanksgiving Eve, November 25, 2015.

10. While in the custody of the Sheriff of Rockingham County, Defendants published stories about the Plaintiff and his pending criminal charges, along with articles, most on the front page of the Greensboro News and Record, detailing his international travel and characterizing it as an "international manhunt" in an effort to sensationalize the story and to sell newspapers.

11. After Plaintiff was released from custody on a Twenty-Five Million Dollar ($25,000,000.00) secured bond, Defendants continued to publish numerous articles painting the Plaintiff in a negative light, leaving out crucial exculpatory facts, in hopes of tainting the potential Rockingham County jury pool against the Plaintiff.

12. Defendant Battaglia was especially obsessed with reporting stories about the Plaintiff. She would publish articles on any negative information that she could find whether it was true or not.

13. Defendant Battaglia was present in Superior Court for each of Plaintiff's hearings, including the one at issue here on October 4, 2017, concerning his criminal charges, all of which have been dismissed, after a guilty plea to the one (1) felony count of Aiding and Abetting the Prostitution of a Minor.

14. Defendant Greensboro News and Record published a very sensationalized headline article authored by Defendant Battaglia in its online edition on October 4, 2017, and again in its print edition on October 5, 2017, that falsely claimed that Plaintiff had violated his pre-trial release conditions by "taking a mini vacation" while on a court approved visit to the Mayo Clinic in Jacksonville, Florida during the week of September 20, 2017.

4

15. Defendant Battaglia was personally present in the Superior Courtroom in Rockingham County on October 4, 2017 and heard the testimony of Rockingham County Deputy Rick Hopper who was tasked with monitoring the Plaintiff's travel through a GPS ankle bracelet placed on the Plaintiff's legs. Deputy Hopper never testified that Plaintiff violated the terms of his pre-trial release and a Judge's Order because "his medical trip to Florida turned into a mini-vacation..." or that the "The monitor indicated that he visited Daytona Beach, Miami, Fort Myers, Sarasota, and St. Petersburg."

16. Despite the "mini vacation" statement being untrue, Defendant Battaglia then went on to write and Defendants Berkshire and N&R published, "The monitor indicated that he visited Daytona Beach, Miami, Fort Myers, Sarasota, and St. Petersburg." Those sensationalized statements were not only untrue, but were intentionally misleading, libelous and defamatory. All Defendants published the same with an extremely reckless disregard to the falsity of those statements.

17. According to the official Rockingham County Superior Court transcript from that hearing on October 4, 2017, there was NO testimony that Plaintiff had visited Miami, Fort Myers, Sarasota, or St. Petersburg, Florida. Defendant Battaglia callously, recklessly, and intentionally wrote extremely false statements about Plaintiff and caused to said intentionally false statements to be published as a headline news article online in the Defendant N&R on October 4, 2017 and again in the print edition on October 5, 2017.

18. Defendant Battaglia intended and hoped to further tarnish the Plaintiff's image and reputation in an effort to improperly influence the potential jury in the Plaintiff's criminal trial with false, misleading and sensationalized travel details, which were all done in an effort to defame the Plaintiff.

5

19. That false, misleading, highly inflammatory and sensationalized article did in fact further defame and injure the Plaintiff's reputation because it involved an assassination on Plaintiff's character and credibility in that he violated a court order with respect to his medical travel to Florida, when in fact Plaintiff did no such thing.

20. Defendant Finnegan had editorial responsibilities for the article and, upon information an belief: (a) failed to perform due diligence and research to determine the truth or falsity of Defendant Battaglia's assertions; (b) failed to adequately question Defendant Battaglia regarding her story; (c) failed to adequately review the article for misleading and contradicting statements that, if properly researched, would have led to the discovery that the statements being made were false; (d) unnecessarily rushed the article to print online the very day of the court hearing the afternoon of October 4, 2017, before it was ready to be published; (e) failed to follow accepted and standard publishing and ethics norms and procedures; (f) failed to follow-up with credible information contradicting Defendant Battaglia's assertions; (g) knowingly published false, misleading, defamatory, sensationalized and contradicting statements; and (h) exhibited a complete reckless disregard for the truth or falsity of the statements they made in other ways to be established through discovery and at trial.

21. The Defendants refused to retract the false, defamatory statements in the October 4, 2017 article printed in its online edition and again on October 5, 2017 in the print edition, which were intentionally false and reckless, alleging that Plaintiff took a "mini vacation" and further stating that, **"The monitor indicated that he visited Daytona Beach, Miami, Fort Myers, Sarasota, and St. Petersburg."**

22. The crux of this defamatory claim is the statement: **"The monitor indicated that he visited Daytona Beach, Miami, Fort Myers, Sarasota, and St. Petersburg."** That

6

statement is **NOT** factual and it does not appear any place in the official court record of Plaintiff's criminal case in Rockingham County or the Official Court transcript of the testimony given in court on October 4, 2017.

23. Plaintiff contends that Ms. Battaglia reviewed the "Argument" paragraph of Assistant District Attorney Charlene Coggins-Franks' Motion to Revoke Conditions of Pre-Trial Release, where Ms. Coggins-Franks wrote: **"That on September 18, 2017 Defendant went to a marina and restaurant in Daytona Beach, Florida. That the marina has multiple locations throughout Florida, including Miami, Fort Myers, Sarasota and St. Petersburg."**

24. Plaintiff contends believes that Ms. Battaglia intentionally took improper liberties with the truth to make it appear to the readers of the N&R that he was flagrantly violating the Court Travel Order and was galavanting around South Florida.

25. Plaintiff alleges that any reader of that intentionally false sentence only needed to look at a map of Florida to see the significant distance between Miami, Fort Myers, Sarasota and St. Petersburg, and then wrongfully conclude that Mr. Snow was indeed a person of bad character, who allegedly openly thumbed his nose at a Court Order and could not be trusted. Thereby implying his guilt of violating the Court Travel Order. That conduct by Ms. Battaglia was an improper attempt to taint the pool of potential jurors for the Plaintiff's upcoming criminal trial.

26. Plaintiff contends that Ms. Battaglia's conduct was malicious and intentional which warrants punitive damages. Her conduct in writing that sentence was deliberately intentional and punitive damages should be awarded against all Defendants.

27. Plaintiff contends that he took a plea deal in his criminal case due to the bad press and libelous, defamatory statements made by the Defendants. The Defendants sold

7

newspapers time and time again using intentionally false and defamatory statements about the Plaintiff. There were many other times the Defendants stretched the truth which will become known through discovery and will be shown at the trial of this matter.

28. Plaintiff alleges that with the N&R being the main reason for him to take a plea in his criminal case in Rockingham County, Plaintiff can no longer hold a government contract, that fact alone is losing Plaintiff profits of over four million dollars ($4,000,000.00) a year.

29. Plaintiff contends, upon information and belief, that Defendants printed intentionally false and defamatory statements as told by former disgraced District Attorney Craig Blitzer ("Blitzer"), and that upon information and belief, the Defendants knew the statements by Blitzer were false, but never corrected the false and extremely defamatory "sex ring" story, which the Assistant District Attorney Michelle Alcon told the Court, on the record, was **NOT TRUE** during Plaintiff's last hearing in July of 2018.

30. Plaintiff alleges that the Defendant N&R had a reporter present in Rockingham County Superior Court for the hearing in July of 2018, but that the Defendant N&R intentionally refused to print that part of the court hearing (that there was no "sex ring"), knowing they would have to correct their intentionally false and reckless statements printed about the Defendant since the criminal case against Plaintiff began in late 2015.

31. Plaintiff has suffered extreme emotional distress and a substantial loss of income in the millions of dollars as a result of the intentional libelous and defamatory published statements and misconduct of Defendants Battaglia, Berkshire, Finnegan and N&R as a result of the intentional and malicious conduct.

32. The Plaintiff has suffered foreseeable, severe emotional distress due to his injuries and the negligent and/or intentional misconduct of Defendants Battaglia, Berkshire, Finnegan

8

and N&R.

33. The wrongful actions of the individual Defendants are imputed to the Berkshire and N&R Defendants by the legal theories of agency, *respondeat superior*, master-servant, and as otherwise provided by law.

### Plaintiff Mickey Dale Snow Complies With N.C.G.S. Chapter 99

34. Pursuant to N.C.G.S. Chapter 99, *to wit*, 99-1 a Plaintiff must notify the potential defendants of its intent to bring an action against defendants at least five (5) days prior to commencing the action.

35. Pursuant to N.C.G.S. 99, Plaintiff Mickey Dale Snow, through counsel, sent a demand letter to the defendants on September 17, 2018 ("Demand Letter") via Federal Express delivery to the Greensboro News and Record, to the attention of Defendant Daniel P. Finnegan.

### Damages

36. Plaintiff Mickey Dale Snow has suffered severe emotional distress, mental anguish, humiliation, embarrassment, injury to moral character and injury to reputation as a result of Defendants' libel and wrongful actions.

### First Cause of Action
### (Libel *per se*)

37. All prior paragraphs are incorporated by reference.

38. Defendants Battaglia, Berkshire, Finnegan and N&R wrote, printed, caused to print, and possessed in printed form the article.

39. Defendants Battaglia, Berkshire, Finnegan and N&R published the article.

40. Statements in the article, as described herein, were false.

41. Statements in the article were defamatory.

9

42. Statements in the article tended to impeach Plaintiff Mickey Dale Snow's reputation and character.

43. At the time of the publication of the article, Defendants either knew that the statements in the article were false or failed to exercise ordinary care in order to determine whether the statements were false.

44. Additionally, at the time of publication of the article, Defendants knew that the statements in the article were false or acted with reckless disregard of whether the statements were false. As such, Defendants published the statements with actual malice.

45. The false, defamatory statements contained in the article were of and concerning Plaintiff Mickey Dale Snow as described herein.

46. The words published by Defendants by means of the articles defamed and libeled Plaintiff Mickey Dale Snow.

47. Plaintiff Mickey Dale Snow has suffered damages, proximately caused by Defendants, as a result of their defamation of Plaintiff Mickey Dale Snow in an amount to be proven at the trial of this matter.

48. Plaintiff Mickey Dale Snow is entitled to punitive damages as more specifically set forth above as allowed by law.

49. Plaintiff Mickey Dale Snow has fulfilled his obligation to provide notice to Defendants under N.C.G.S. 99-1(a).

## Second Cause of Action
### (Libel *Per Quad*)

50. All prior paragraphs are incorporated by reference.

51. Defendants Battaglia, Berkshire, Finnegan and N&R wrote, printed, caused to

print, and possessed in printed form the article.

52. Defendants Battaglia, Berkshire, Finnegan and N&R published the article.

53. Statements in the article, as described herein, were false.

54. Statements in the article were defamatory.

55. Statements in the article tended to impeach Plaintiff Mickey Dale Snow's reputation and character.

56. At the time of the publication of the article, Defendants either knew that the statements in the article were false or failed to exercise ordinary care in order to determine whether the statements were false.

57. Additionally, at the time of publication of the article, Defendants knew that the statements in the article were false or acted with reckless disregard of whether the statements were false. As such, Defendants published the statements with actual malice.

58. The false, defamatory statements contained in the article were of and concerning Plaintiff Mickey Dale Snow as described herein.

59. The words published by Defendants by means of the articles defamed and libeled Plaintiff Mickey Dale Snow.

60. Plaintiff Mickey Dale Snow has suffered damages, proximately caused by Defendants, as a result of their defamation of Plaintiff Mickey Dale Snow in an amount to be proven at the trial of this matter.

61. Plaintiff Mickey Dale Snow is entitled to punitive damages as more specifically set forth above as allowed by law.

62. Plaintiff Mickey Dale Snow has fulfilled his obligation to provide notice to Defendants under N.C.G.S. 99-1(a).

### Third Cause of Action
### (Punitive Damages)

63. Plaintiff seeks punitive damages for the intentional, malicious and reckless conduct of Defendants Battaglia, Berkshire, Finnegan and N&R as mentioned above.

### Demand for Jury Trial

64. The Plaintiff respectfully demands a jury trial on all issues of fact that may arise from the pleadings in this cause.

### Prayer for Relief

WHEREFORE, upon the trial of this matter, the Plaintiff prays the Court award relief as follows:

1. That Plaintiff Mickey Dale Snow have and recover against Defendants jointly and severally, all such monetary relief, injunctive relief, and equitable relief to which Plaintiff may be entitled under law, including but not limited to compensation for mental anguish, emotional distress, injury to reputation, injury to moral character, humiliation, embarrassment, loss of earnings capacity, loss of enjoyment of life, medical expenses, and other out-of-pocket expenses in an amount in excess of Ten Million Dollars ($10,000,000.00);

2. That Plaintiff Mickey Dale Snow have and recover judgment against Defendants jointly and severally compensatory damages in such amount as will fully compensate him for his injuries and damages in an amount in excess of Ten Million Dollars ($10,000,000.00);

3. That the Plaintiff Mickey Dale Snow have and recover judgment against Defendants jointly and severally for punitive damages in such amount as will fully punish Defendants for their conduct in this matter and to deter future conduct of the same nature in an amount in excess of Thirty Million Dollars ($30,000,000.00);

4. That the cost of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, be taxed against the Defendants;

5. That the judgment against the Defendants bear interest from the time of the institution of this action as provided by law, including interest as provided under state law on the state law claims;

6. That the Court grant a trial by jury on all issues so triable; and

7. For such other and further relief the Court deems appropriate.

13

This the 3 day of October, 2018.

                                                                    _____
                                                                    Mickey Dale Snow
                                                                    *Pro Se*
                                                                    698 S. Linden Drive
                                                                    Suite 100F
                                                                    Eden, North Carolina 27288
                                                                    Telephone: (336) 613-5142
                                                                   mickey@snowent.com

# VERIFICATION

STATE North Carolina

COUNTY Rockingham

I, MICKEY DALE SNOW, first being duly sworn, deposes and says that he is the Plaintiff named in the foregoing action; that he has read the foregoing instrument and knows the contents thereof and that the same is true of his own knowledge except as to those matters and things therein alleged upon information and belief and as to those he believes them to be true.

_____
Mickey Dale Snow, Plaintiff

Sworn to and subscribed before me

this the 3 day of October, 2018.

Katrina Lynn Snow
Notary Public
Rockingham County
North Carolina
My Commission Expires 1/21/2023

Katrina Lynn Snow
Notary Public
My Commission Expires:

1/21/2023