IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| MICKEY DALE SNOW, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:18-CV-837 |
| BERKSHIRE HATHAWAY, INC., GREENSBORO NEWS & RECORD, LLC, DANIEL P. FINNEGAN, and DANIELLE BATTAGLIA, | ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Asserting he is a citizen of Florida, Plaintiff Mickey Dale Snow brought state law libel claims in this court against several defendants, including at least one North Carolina citizen, alleging each made false and misleading statements about him. Upon a motion to dismiss for lack of diversity jurisdiction, the Court allowed limited discovery as to Mr. Snow's citizenship.

After considering the evidence, the Court finds that Mr. Snow has not met his burden of showing he is a citizen of Florida and not North Carolina. Because there is not complete diversity to support subject matter jurisdiction, the defendants' motions to dismiss will be granted.

### I. Diversity Jurisdiction

Diversity jurisdiction is proper under 28 U.S.C. § 1332(a) only where the parties are citizens of different states. *James G. Davis Constr. Corp. v. Erie Ins. Exch.*, 953 F.

Supp. 2d 607, 609 (D. Md. 2013).[1]  Diversity must be "complete," and "no plaintiff may be a citizen of the same state as *any* defendant."  *Id.*[2]  "A person is a citizen of a state only if she is a citizen of the United States and a domiciliary of that state."  *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017).  Domicile is determined by presence in a state with intent to remain.  *See id.*; *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008) ("Domicile requires physical presence, coupled with an intent to make the State a home.").

"Ordinarily an individual's citizenship will be determined by his place of residence," *Sligh v. Doe*, 596 F.2d 1169, 1171 n.5 (4th Cir. 1979), but not all those physically present within a state are residents.  *See Ecker v. Atl. Refining Co.*, 222 F.2d 618, 621 (4th Cir. 1955).  Furthermore, "citizenship cannot be inferred from allegations of mere residence, standing alone."  *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998).  A resident intends to live in a state for the time being, but a citizen has an intention to remain in the state indefinitely.  *Ecker*, 222 F.2d at 621.  Therefore, "[f]or purposes of diversity jurisdiction, residency is not sufficient to establish citizenship."  *Johnson*, 549 F.3d at 937 n.2; *accord Scott*, 865 F.3d at 195.

---

[1] Mr. Snow alleges in his original complaint and his amended complaint that this Court has either federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 or federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Doc. 1 at ¶ 6; Doc. 21 at ¶ 7.  However, as Mr. Snow has asserted only state law claims, there is no basis for federal question jurisdiction, and Mr. Snow appears to concede this point by only mentioning diversity as a basis for jurisdiction in his briefs.  *See* Doc. 43-1 at 1; Doc. 44-1 at 1.

[2] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

"Citizenship, like the other ingredients or elements of diversity jurisdiction . . . presents a preliminary question of fact to be determined by the trial court." *Sligh*, 596 F.2d at 1171 (footnotes omitted). When a party moves to dismiss under Rule 12(b)(1), the Court acts as a fact-finder "for the limited purpose of assessing disputes over allegations critical to establishing subject matter jurisdiction." *James G. Davis Constr. Corp.*, 953 F. Supp. 2d at 609. Where, as here, the facts relevant to the determination of the Court's subject matter jurisdiction are not "inextricably intertwined" with the merits of the plaintiff's tort claim, "[t]he district court is authorized to resolve factual disputes in evaluating its subject matter jurisdiction." *Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 154 (4th Cir. 2016). The Court may consider "pleadings, affidavits, depositions, and even hear testimony" to determine the existence of subject-matter jurisdiction without converting the motion to one for summary judgment. *James G. Davis Constr. Corp.*, 953 F. Supp. 2d at 609.

## II. Evidence of Mr. Snow's Citizenship

In his verified complaint filed on October 3, 2018, *see* Doc. 1 at 15, Mr. Snow alleged that he was a citizen of Florida, *id.* at ¶ 1, and that the defendants were citizens of other states. *Id.* at ¶¶ 2–5. He made similar allegations in his verified First Amended Complaint. Doc. 21 at ¶¶ 1–6, p. 15. The defendants do not dispute that at least one of the defendants is a citizen of North Carolina. Doc. 33 at 3; Doc. 38 at 3. They reference and submit substantial credible evidence that Mr. Snow is a citizen of North Carolina. This evidence includes:

- Filings in a North Carolina criminal case in which Mr. Snow was the defendant, including:

    - An affidavit submitted in connection with a bond motion, signed by Mr. Snow on August 27, 2017, in which Mr. Snow affirmed under oath that he is a "citizen and resident of Rockingham County, North Carolina." Doc. 45-7 at ¶ 1; *see also* Doc. 45-5 at ¶ 3 (defense motion to modify bond stating Mr. Snow "resides with his wife in Rockingham County"); Doc. 45-6 at 2 (memorandum of law contending Mr. Snow has "family ties, a home, and a business in Rockingham County").

    - An affidavit signed by Mr. Snow's wife on August 27, 2017, affirming under oath that she is a citizen and resident of Rockingham County, North Carolina. Doc. 45-8 at ¶¶ 1, 4.

    - A September 2017 court order modifying Mr. Snow's bond at his request and finding that Mr. Snow is "a life-long resident of Rockingham County." Doc. 33-2 at p. 3 ¶ 16.

    - An appearance bond signed by Mr. Snow on December 16, 2015, and listing his address in Eden, North Carolina. Doc 33-1 at 1.

- Mr. Snow's September 2016 answer to a civil complaint in the Middle District of Florida, in which Mr. Snow denied that he was a resident of Florida and stated that he "is a resident of Rockingham County, North Carolina." *See* Doc. 45-10 at 3.

- Corporate filings with the North Carolina Secretary of State from 2014 to 2017 for Mr. Snow's company, Snow Enterprises, LLC, which list a North Carolina address for him. *See* Doc. 45-11 at 3–6. The 2017 filing was certified by Mr. Snow as manager. *Id.* at 6.

- The civil cover sheet in this case, signed by Mr. Snow and submitted at the time the case was filed, in which Mr. Snow listed the same North Carolina address as his 2017 corporate filings and stated his county of residence as Rockingham. *See* Doc. 2.

- A complaint Mr. Snow filed against unrelated parties ("the Page lawsuit") on November 20, 2018, in which he stated that he was a resident and citizen of Eden, North Carolina. Complaint, *Snow v. Page*, No. 18-CV-996, Doc. 1 at ¶ 1 (M.D.N.C. November 30, 2018).

Mr. Snow submitted evidence that he is a citizen of Florida. This evidence includes a copy of his Florida driver's license that was issued in 2013, a copy of his

4

Florida voter information card with a 2012 registration date, Doc. 19-1, and the amended complaint filed in the Page lawsuit in which he alleged that he is a "resident and citizen of Ormond Beach, Florida." Doc. 19-2 at ¶ 1. In briefs filed after Mr. Snow retained counsel, counsel asserted that Mr. Snow's initial allegation in the first Page complaint that he was a citizen of North Carolina was a "typographical error." Doc. 43-1 at 5; Doc. 44-1 at 5.[3]

Additionally, the defendants have filed Mr. Snow's responses to the defendants' interrogatories and document requests, as well as the transcript of his deposition. *See* Docs. 45-2, 45-3, 45-4. In his interrogatory responses, Mr. Snow asserts that he moved from Eden, North Carolina, to Florida in 2004, and that he has lived in Florida since that time. Doc. 45-2 at 1. He lists several Florida-based doctors and asserts that his bank statements are sent to him in Ormond Beach, Florida. *Id.* at 2–3.

The documents he produced to the defendants show ties to both Florida and North Carolina, including the following:

---

[3] In these briefs, Mr. Snow also refers to "a ten (10) page PDF document" and two official court transcripts from Rockingham County Superior Court proceedings as attached to the brief, *see* Doc. 43-1 at 3, 11, 12; Doc. 44-1 at 3, 11, 12, but no such documents were attached. At least some of the items he describes as within the PDF appear to be in his production of documents, which was filed by the defendants, *see* Doc. 45-3 at 48, and the Court has considered those materials. Beyond that, the Court does not consider matters outside the record, and statements in a brief are not evidence. *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 730 (M.D.N.C. 2013); *see also INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) (declining to consider "[c]ounsel's unsupported assertions in respondent's brief" as evidence), *superseded by statute on other grounds,* 8 U.S.C. § 1254(b)(2). Even if the Court were willing to consider counsel's quotes from other court documents and a transcript, their probative value is limited given their incompleteness and Mr. Snow's contrary testimony that he is still restricted from residing permanently in Florida as a condition of his probation and that, by choice, he did not have his probation transferred to Florida. *See* Doc. 45-4 at 88–89.

- Bank statements from North Carolina-based banks listing an Ormond Beach, Florida address for Mr. Snow. Doc. 45-3 at 3–4.[4]

- A Florida county tax statement listing an Ormond Beach, Florida address for Mr. Snow. *Id.* at 5.

- Tax refund documents from various states sent to Mr. Snow at his Ormond Beach, Florida address. *Id.* at 47.

- Mr. Snow's insurance cards effective May 2018 listing both Ormond Beach and Eden, North Carolina, addresses. *Id.* at 48.

- Mr. Snow's pilot's license, voter information card, and driver's license all listing an Ormond Beach, Florida address. *Id.*

- Various other documents, including an electric bill for the Florida address in his wife's name, *id.* at 7, a few emails sent by or to Mr. Snow from 2013 to 2019 that tend to indicate Mr. Snow's presence in Florida at the time of writing, *id.* at 30–46, and various receipts from Florida business establishments that do not contain the name of the recipient. *Id.* at 8-29.

The parties also stipulated that Mr. Snow's tax returns were filed listing a Florida address but were prepared by a North Carolina accountant. Doc. 45 at 2 n.1.

At his deposition, Mr. Snow testified that he moved to Eden, North Carolina, in the early 1990s but he had "no intention of staying" there. Doc. 45-4 at 53. He moved from Eden to Florida in 2004 and purchased a home there. *Id.* at 37–38; *see also id.* at 56. When he moved to Florida in 2004, Mr. Snow rented out his Eden home, *id.* at 48 (referring to his Eden home, "Bearslide"), but he then moved back to Eden after his arrest in 2015. *Id.* at 57. He again rented the Eden home out in 2018 and bought a house in Forsyth County, North Carolina. *Id.*

---

[4] Mr. Snow also testified that he opened a bank account in Florida, possibly with BB&T, but he could not confirm any specifics about this account. *See* Doc. 45-4 at 91–92.

Mr. Snow also testified that before his 2015 arrest, he was living in Florida and, briefly, Thailand, and would visit North Carolina about once a month, staying with his daughter or son. *Id.* at 75, 80. *But see id.* at 94–95 (testifying he was not in North Carolina more than two times in 2015). After his arrest in October 2015, he was living primarily in North Carolina due to restrictions on his travel. *Id.* at 77–79. He has had only limited travel to Florida, *id.* at 56, and he estimated he has been back to Florida 20 times since his arrest. *Id.* at 58–59. Mr. Snow testified that he has also been restricted from living in Florida full time since starting supervised probation in August 2018, which requires him to be in North Carolina for "one or two weeks out of the month," *id.* at 88–89, and that, in the month before his deposition, he had stayed in Florida for one week. *Id.* at 36. When asked why he did not ask to have his probation transferred to Florida, he answered that he "want[s] to be here [North Carolina] for" an unspecified continuing investigation. *Id.* at 89.

Notwithstanding his apparent residence in North Carolina since his arrest, Mr. Snow currently considers his home to be 540 Leeway Trail, Florida, *id.* at 89, and his citizenship to be in Florida. *Id.* at 87. He testified that "everything" he owns is in Florida. *Id.* at 90. However, he also testified that his company, Snow Enterprises, LLC, is headquartered in Eden, *id.* at 80–81, that this company pays all of his bills, *id.* at 85, 92, and that he essentially is the company. *Id.* at 44–45. Finally, Mr. Snow testified that he has a headstone with his name on it in Elkin, North Carolina, near a family church that he helps maintain. Doc. 45-4 at 71.

**III. Analysis**

Mr. Snow, as the plaintiff, has the burden of showing diversity jurisdiction exists. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). As the parties agree that multiple defendants are citizens of North Carolina, Mr. Snow must show that he was a citizen of Florida and not of North Carolina at the time this action was filed[5] to establish complete diversity. *See James G. Davis Constr. Corp.*, 953 F. Supp. 2d at 609.

As previously noted, "[o]rdinarily an individual's citizenship will be determined by his place of residence." *Sligh*, 596 F.2d at 1171 n.5. "Whether a person is a domiciliary turns on the individual's intent. . . . A resident intends to live in the place for the time being and a citizen has an intention to remain in the state indefinitely." *Scott*, 865 F.3d at 195; *see also Johnson*, 549 F.3d at 937 n.2; *Ecker*, 222 F.2d at 621. While "citizenship cannot be inferred from allegations of mere residence, standing alone," *Axel Johnson*, 145 F.3d at 663, "[p]hysical presence coupled with residency is prima facie proof of citizenship." *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 750 n.6 (4th Cir. 2016).

Upon consideration of the evidence, the Court finds and concludes for purposes of determining subject matter jurisdiction that Mr. Snow is a citizen of North Carolina and that there is not full diversity of citizenship. He listed Rockingham County, North

---

[5] *See Grupo Dataflux v. Atlas Global Grp. L.P.*, 541 U.S. 567, 571 (2004) ("Th[e] time-of-filing rule . . . measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing."); *Mollan v. Torrance*, 22 U.S. 537, 539 (1824) ("[J]urisdiction of the Court depends upon the state of things at the time of the action brought, and . . . after vesting, it cannot be ousted by subsequent events.").

8

Carolina, as his place of residence when he filed this lawsuit, he has otherwise twice told courts in the recent past that he is a citizen of North Carolina, one time under oath in state court and one time after he filed this lawsuit, and several other times he listed his residence or address as in North Carolina in court and other government filings. His wife has also recently affirmed that she is a North Carolina citizen.

In September 2016, he denied to a Florida federal court that he was a resident of Florida and stated that he "is a resident of Rockingham County, North Carolina." *See* Doc. 45-10 at 3. Mr. Snow's representations in 2017 that he was a citizen and resident of North Carolina appear to have helped him reduce his bond in his criminal matter, as the Superior Court granting the modification stated in its order that it had "further considered and taken into account" other factors including that "Defendant is . . . a life-long resident of Rockingham County." Doc. 38-2 at p. 3 ¶ 16. He has not presented any evidence as to how his circumstances have changed since then.[6] *Cf. Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 456 & n.1 (W.D.N.Y. 2011) (stating the defendant would be "judicially estopped" from denying his domicile in New York seven years earlier "[h]aving successfully persuaded a different federal district court that his domicile" was New York at that time, and stating it was his burden to prove his domicile changed). Since that time, he has been physically present in North Carolina for most of the time, he has maintained a residence in North Carolina, either in Rockingham or Forsyth Counties, and he is on probation under the supervision of the North Carolina courts. He has chosen not

---

[6] Mr. Snow has not submitted a supporting brief or additional evidence following the additional discovery on this issue, as allowed by the Court's Order. *See* Doc. 42 at 4.

to seek a transfer of his probation to Florida. He has longstanding business and family ties in North Carolina, and he has several times in recent years given the North Carolina Secretary of State a North Carolina address.

Mr. Snow's recent statement in the complaint about his citizenship is not dispositive of this issue. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) ("[T]he plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties"). Furthermore, his deposition testimony about his intent is not credible; it generally was confusing, self-serving, and contradictory, and he did not explain in his deposition or any other submissions to the Court why he previously told a state court, under oath, that he was a citizen and resident of North Carolina. *See Frett-Smith v. Vanterpool*, 511 F.3d 396, 401 (3d Cir. 2008) ("One's testimony as to his intention to establish a domicile, while entitled to full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is contradicted or negated by an inconsistent course of conduct."); *Deutsche Bank Nat'l Trust Co. v. Abed*, No. 16-CV-0958, 2017 WL 385040, at *2 (D. Minn. Jan. 27, 2017) (finding litigant's inconsistent and "belated claim" about citizenship to be insufficient to establish diversity), *appeal filed*, No. 17-1679 (8th Cir. Mar. 30, 2017). Nor has he provided any explanation as to how his circumstances or intent have changed since he told other courts he lived in and was a citizen of North Carolina.

The Court has considered the contrary documentary evidence, but it does not outweigh Mr. Snow's previous statements and testimony in court filings and submissions

10

to the Secretary of State. He does have a Florida driver's license and has registered to vote there, but to the extent he was a Florida resident when he took those actions in 2012 and 2013, *see* Doc. 45-3 at 48, he disclaimed any such citizenship at least as early as 2016, when he told the court in Florida that he was a resident of North Carolina, and again in 2017, when he told a Superior Court judge under oath that he was a citizen and resident of North Carolina.

## IV. Conclusion

The Court finds Mr. Snow has not met his burden of showing he is a citizen of Florida instead of North Carolina. Accordingly, there is no diversity of citizenship and the Court lacks subject matter jurisdiction in this matter.

The motions to dismiss, Docs. 32 and 37, are **GRANTED** and the entire case is **DISMISSED** without prejudice. All other outstanding motions to dismiss, Docs. 7, 27, are **DENIED** without prejudice as **MOOT**. Judgment will be entered as time permits

**SO ORDERED**, this the 25th day of April, 2019.

_____
UNITED STATES DISTRICT JUDGE